UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
YI SUN,

                                   Plaintiff,

          -against-                                              No. 18 CV 11002-LTS-SN

NEW YORK CITY POLICE
DEPARTMENT, ADMINISTRATION
FOR CHILDREN'S SERVICES OF THE
CITY OF NEW YORK, HUGH H. MO &
THE LAW FIRM OF HUGH H. MO, PC.,
SCOTT RICHMAN & THREADTEX INC.,
JOHN DOE 1, JOHN DOE 2,

                                   Defendants.
-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

          Plaintiff Yi Sun ("Plaintiff"), who appears pro se, brings this action pursuant to 42

U.S.C. section 1983 ("section 1983") alleging violations of her rights under the First, Fourth,

Fifth, and Fourteenth Amendments that allegedly occurred between November 22, 2003, and

January 20, 2019, as well as violations of 42 U.S.C. section 1985 ("section 1985") and violations

of state law, seeking damages.  (Docket Entry Nos. 1, 19.)  Defendants New York City Police

Department ("NYPD"), Administration for Children's Services of the City of New York

("ACS") (together, "the City Defendants"), Hugh H. Mo ("Mo"), and The Law Firm of Hugh H

Mo. P.C. ("the Law Firm") have moved pursuant to Federal Rules of Civil Procedure 8(a)(2),

12(b)(1), and 12(b)(6) to dismiss the complaint.  (Docket Entry Nos. 7, 46.)[1]  The Court has

jurisdiction of this action pursuant to 28 U.S.C. section 1331.

---

[1]       In an additional filing (Docket Entry No. 19) which the court accepted as a supplement to
          the Complaint (See Docket Entry No. 34), Plaintiff raised additional allegations and
          indicated that she wished to "adjoin" two unidentified officers of the New York City
          Police Department ("the Doe Defendants") to her complaint.  The Clerk of Court has

The Court has reviewed thoroughly all the submissions and arguments of the parties,[2] and for the following reasons, grants the motion to dismiss as to all claims except for Plaintiff's section 1983 claim against the Doe Defendants for violations of the Fourth Amendment based on the events of January 20, 2019, as to which the Court denies the motion.

BACKGROUND

The following recitation of relevant facts is drawn from the Complaint and its attachments, (Docket Entry ("D.E.") No. 1 ("Complaint" or "Compl.") and sequentially-paginated attachments ("-1, -2, -3, -4")), and the Supplemental Complaint (Docket Entry No. 19 ("S.C.")), the well-pleaded factual contents of which are taken as true for purposes of this decision.

The complaint catalogues events that allegedly occurred over the course of 21 years and arose from Plaintiff's relationships and interactions with: her ex-husband, Lida Sun; the couple's then-minor daughter; Plaintiff's former physician, Tsai Chung Chao, and his private counsel, Hugh H. Mo and the Law Firm of Hugh H. Mo.; as well as from Plaintiff's interactions with the Doe Defendants, officers of the NYPD, and employees of ACS.

Between 1998 and 2015, Plaintiff was the subject of more than 60 reports of abuse and/or neglect to the NYPD and ACS.  (Compl., DE 1-2, at 23.)  In 2007, Plaintiff pled guilty in New York Family Court to "Child Neglect of Abuse or Maltreatment," which resulted

---

added the Doe Defendants to the caption.  The Court has considered these additional claims in evaluating the sufficiency of the Complaint, as supplemented.  There is no indication that the Doe Defendants have been identified or served.  Plaintiff's claims against Defendants Richman and Threadtex Inc. were dismissed on March 20, 2019. (Docket Entry No. 34).

[2]  The submissions considered by the Court are docket entry numbers 1, 7, 9, 10, 19, 22, 39, 46, 48, 49, 50, 78, 79, 81, and 83.

in loss of custody of her daughter for three years.  (Id. at 23, 24.)  In March of 2015, ACS again

investigated Plaintiff on allegations of child abuse and/or neglect.  (Id. at 26.)  During that

investigation, Plaintiff was interviewed by ACS employees at her home, where ACS employees

observed a mark on Plaintiff's hand that they believed was evidence of abuse.  (Id.)  Plaintiff was

also interviewed at an ACS office during which time the employees constantly told "dirty lies"

and "forced" her to agree to "an untrue statement about the case."  (Id. at 25, 27.)  On March 13,

2015, ACS temporarily removed Plaintiff's daughter from her custody (id. at 26) and, on March

16, 2015, ACS commenced an action in New York state Family Court against Plaintiff for child

neglect.  (Id. at 25, 26.)   On March 17, 2015, the Family Court ordered that Plaintiff's daughter

be returned to her on a temporary basis.  (Docket Entry No. 49, Ridgeway Declaration,

("Ridgeway Dec."), Ex I.)[3]  Plaintiff alleges that ACS employees and attorneys made

"misrepresentations" about her, including about Plaintiff's mental health, during the Family

Court proceedings and told "continual lies to the Judge" and "bad-mouth[ed] [her] to the Court."

(Compl., DE 1-1, at 8, 16.)  Plaintiff was represented by counsel in those proceedings, but now

asserts that the Family Court denied her the opportunity to "show [her] evidence."  (Id. at 9;

Compl., DE 1-3, at 42.)  There was a finding of neglect and, on May 9, 2017, the Family Court

ordered that the child be placed in foster care.  (Compl., DE 1-3, at 42; Ridgeway Dec., Ex. M.)

Plaintiff moved for reconsideration, which motion was denied, and appealed to the Appellate

Division, First Judicial Department, which affirmed the decision of the Family Court.  (Compl.,

DE 1-2, at 29.)  The New York State Court of Appeals denied Plaintiff leave to appeal the

---

[3]         "A court may take judicial notice of a document filed in another court not for the truth of
the matters asserted in the other litigation, but rather to establish the fact of such litigation
and related filings."  Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,
146 F.3d 66, 70 (2d Cir.1998).

Appellate Division's decision.  (Id.)  Plaintiff also alleges that, throughout her case, she was "blacklisted by [ACS] and some prejudiced ACS worker [who] often uses her/his position of power to get personal with the Chinese single mother."  (See, e.g., Compl., DE 1-2, at 24-25.)

Separately, between 2003 and 2013, Plaintiff was allegedly sexually assaulted and/or raped by six officers from five different precincts of the NYPD.  (See, e.g., Compl., DE 1-1, at 7, 11-14.)  Plaintiff alleges that these officers "extorted sex and money from [her] in order for [her] to stay out of jail and keep [her] daughter" in connection with her child custody case. (Id. at 8.)  Plaintiff reported these encounters to police precincts, the NYPD's Internal Affairs Bureau ("IAB"), and the Civilian Complaint Review Board after they happened (id. at 9, 13-15), but was threatened, mocked, and intimidated by members of the NYPD and the IAB.  (Id. at 8, 9, 12-19.)  Plaintiff alleges that her treatment was an example of how NYPD officers "shield each other" from punishment.  (Id. at 5)

On January 13, 2008, Plaintiff's physician, Dr. Tsai Chung Chao, allegedly injected her with a narcotic and sexually assaulted her.  (Compl., DE 1-4, at 60.)  According to Plaintiff, Dr. Chao also made more than 30 false reports of child abuse against Plaintiff, as result of which she was detained at the 13th Precinct on August 26, 2009, and June 12, 2010.  (Id. at 61.)  In 2010, Plaintiff filed a lawsuit in New York State court against Dr. Chao for sexual assault.  (Id.)  Dr. Chao was represented in that case by Hugh H. Mo, a former "Deputy Commissioner" of the NYPD, and the Law Firm.  (Id. at 60.)  During the course of that litigation, Plaintiff alleges, Mo "used a series of tricks to cancel or dismiss the case."  (Id. at 62.) Plaintiff further alleges that the "jury trial ha[d] been tainted by a conspiracy" (id. at 63), as purportedly evidenced by the fact that Mo was a "former colleague and good friend" of the trial

judge who "always support[ed] him," regularly sustained his objections, and held "closed-door meeting[s] with the attorneys." (Id. at 63, 66.)

On May 7, 2018, Plaintiff attempted to provide new "material" evidence related to the conduct of Dr. Chao to Detective Maddy Acevado of the NYPD's Manhattan Special Victims Division. (Compl., DE 1-2, at 20.) However, Det. Acevado "refused to take" the evidence and closed the case. (Id.) Plaintiff then spoke with Lieutenant Morang of the same division to report Det. Acevado and state that Plaintiff would file a complaint. (Id. at 21.) Lieutenant Morang "strongly denounced" Plaintiff's decision to do so. (Id.) Instead, Plaintiff wrote to NYPD officials, such as NYPD Commissioner James P. O'Neill, repeating her complaint and asking for further investigation. (Id.) She received no response. (Id.)

In the early morning of January 20, 2019, Plaintiff was awakened by the Doe Defendants knocking on her apartment door. (S.C. at 1.) Upon opening the door, the officers "immediately" entered the apartment without explanation and forced Plaintiff to leave the apartment. (Id. at 1-2.) Plaintiff was taken by ambulance to the emergency room of Mount Sinai Hospital where she was seen by a doctor for a "psychiatric problem." (Id. at 2, 5.) Plaintiff was experiencing a "bit of depression" and was diagnosed with adjustment disorder with anxiety and discharged that same day. (Id. at 2, 3, 5.) After her discharge, Plaintiff went to the 25th Precinct of the NYPD and asked why officers had come to her apartment and hospitalized her, in response to which she was told that a report about her had been called in to 911. (Id. at 3.) Plaintiff alleges that this hospitalization was an "unconstitutional vindictive punishment" by the NYPD for her bringing this action in federal court two months earlier on November 26, 2018. (Id.)

<u>DISCUSSION</u>

Standard of Review

   To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; there must be factual content plead that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Under the Rule 12(b)(6) standard, the court accepts as true the nonconclusory factual allegations in the complaint and draws all reasonable inferences in the nonmoving party's favor.  <u>Roth v. Jennings</u>, 489 F.3d 499, 501 (2d Cir. 2007).

   The Court is obliged to construe <u>pro</u> <u>se</u> pleadings liberally, <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they suggest." <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994).

   Interpreting the Complaint to raise the strongest claims it suggests, the Court construes the Complaint, as supplemented, to assert claims pursuant to 42 U.S.C. section 1983 that Defendants violated her federal constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments.  The Complaint raises the following claims: (1) the Doe Defendant NYPD officers retaliated against Plaintiff for bringing this action by forcibly hospitalizing her on January 20, 2019, in violation of the First Amendment; (2) the Doe Defendant NYPD officers entered Plaintiff's home and seized her without a warrant on January 20, 2019, in violation of the Fourth Amendment; (3) other unnamed NYPD officers detained her in the summer of 2009, in violation of the Fourth Amendment; (4) NYPD officers sexually assaulted Plaintiff multiple times between 2003 and 2013, in violation of the Fourth Amendment and the Due Process

Clause of the Fourteenth Amendment; (5) NYPD officers conspired to cover up the alleged

sexual assaults and thereby deprive Plaintiff of her right to Due Process under the Fourteenth

Amendment; (6) ACS employees violated her Fifth Amendment rights in the March 16, 2015,

interview by allegedly forcibly securing her agreement to their statement of her case; (7) ACS

employees deprived Plaintiff of Due Process under the Fourteenth Amendment during their

investigation of complaints that Plaintiff mistreated her child and their presentation of findings in

Family Court proceedings between 2007 and 2017; (8) ACS employees "blacklisted" Plaintiff on

the basis of her race and/or nationality in violation of the Equal Protection Clause of the

Fourteenth Amendment during the pendency of proceedings in Family Court; (9) ACS

employees conspired to present false evidence during the proceedings in Family Court and

interfered in Plaintiff's family privacy in violation of the Due Process Clause of the Fourteenth

Amendment; and (10) Hugh H. Mo and the Law Firm deprived Plaintiff of Due Process under

the Fourteenth Amendment during court proceedings from 2009 to 2018.  The Court also

construes the Complaint to assert claims of conspiracy under 42 U.S.C. section 1985 against all

Defendants, as well as claims under state law.


Statute of Limitations for Section 1983 claims

                    For claims under 42 U.S.C. section 1983, "the applicable limitations period is

found in the general or residual state statute of limitations for personal injury actions."  Pearl v.

City of Long Beach, 296 F.3d 76, 79 (2d Cir 2015) (internal citation omitted).  New York State's

statute of limitations for unspecified personal injury actions is three years.  Vega v. Hempstead

Union Free Sch. Dist., 801 F.3d 72, 79 (2d Cir 2015).  The accrual date on which the statute of

limitation begins to run is determined by federal law for purposes of a section 1983 action; such

claims accrue when the plaintiff has "a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." Allen v. Atal, 665 Fed. App'x 9, 12 (2d Cir. 2016) (citing Wallace v. Kato, 549 U.S. 384, 388 (2007)).

Plaintiff commenced this action by filing the Complaint on November 26, 2018. (Compl. at 7.)  Accordingly, all of Plaintiff's section 1983 claims for injuries arising from events that took place before November 26, 2015, of which Plaintiff had knowledge before that date and as to which plaintiff could have then filed suit, are untimely.  Based on the facts alleged in the Complaint, as supplemented, Plaintiff's claims that are now time barred are: (1) Plaintiff's Fourth and Fourteenth Amendment Due Process claims against the City Defendants based on alleged sexual assaults by NYPD officers between 2003 and 2013 (Compl., DE 1-1, at 7, 11-14); (2) Plaintiff's claim against the City Defendants for violation of the Fourth Amendment based on her detention at the 13th Precinct in 2009, (Compl., DE 1-4, at 61); (3) Plaintiff's Fourteenth Amendment claim against the City Defendants based on the 2007 Family Court proceedings, (see, e.g., Compl., DE 1-3, at 46); (4) Plaintiff's Fifth Amendment claim against the City Defendants based on the March 16, 2015, meeting with ACS employees, (Compl., DE 1-1, at 4; Compl., DE 1-2, at 25, 27);[4] (5) Plaintiff's Fourteenth Amendment claims against the City Defendants based on ACS's investigation of, and Family Court proceedings against, Plaintiff through November 26, 2015, (Compl., DE 1-1, at 4; Compl., DE 1-2, at 25); (6) Plaintiff's Fourteenth Amendment Due Process claim against Mo and the Law Firm arising based on

---

[4]     The Court also notes that, while Plaintiff alleges that ACS employees "forced [her] to agree [with] their untrue statement in the matter," she fails to state with any particularity what the statement was, why it was untrue, or in what way she was "forced" to agree. (Compl., DE 1-1, at 4.)

conduct during litigation in 2010.  (Compl., DE 1-4, at 60, 62.)  The motions to dismiss are

granted as to these claims.

Section 1983 claims against the NYPD and ACS

As agencies of the City of New York, the NYPD and ACS are not entities that can

be sued.  N.Y. City Charter Ch. 17, § 396 ("All actions and proceedings for the recovery of

penalties for the violation of any law shall be brought in the name of the city of New York and

not in that of any agency, except where otherwise provided by law."); Friedman v. N.Y.C.

Admin. For Children's Servs., 502 F. App'x 23, 27 n.3 (2d Cir. 2012) (ACS is not a suable

entity); Jenkins v. City of New York, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (the NYPD is not a

suable entity); see also Emerson v. City of New York, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010)

("[A] plaintiff is generally prohibited from suing a municipal agency.").  The Court therefore

construes any claims against these defendants as brought against the City of New York ("the

City").  Harris, 572 F.3d at 72.

To state a claim under section 1983 against a municipality such as the City of

New York, Plaintiff must allege plausibly that the municipality itself, not merely one or more

employees of the municipality, caused the violation of the plaintiff's rights.  See Connick v.

Thompson, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable

under [section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights

or 'causes' a person 'to be subjected' to such deprivation.") (quoting Monell v. Dep't of Soc.

Servs. of City of New York, 436 U.S. 658, 692 (1978)).  Thus, to state a section 1983 claim

against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal

policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the

plaintiff's constitutional rights.  Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012);

see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997).  Furthermore,

"isolated acts… by non-policymaking municipal employees are generally not sufficient to

demonstrate a municipal custom, policy, or usage . . . ."  Jones, 691 F.3d at 81.

    Plaintiff alleges that six officers of the NYPD working in five different precincts

between the years of 2003 and 2013 raped her and "extorted sex and money from [her] in order

for [her] to stay out of jail and keep [her] child."  (Compl., DE 1-1, at 4.)  Plaintiff further asserts

that members of the NYPD worked to "shield each other from punishment" for the alleged

sexual assaults committed by officers between 2003 and 2013.  (Compl., DE 1-1, at 4.)  To the

extent these claims are timely – that is, based on events which occurred after Nov. 26, 2015 –

Plaintiff alleges no facts from which the Court can properly infer that these acts were done

pursuant to a policy, custom, or practice of the City, or that such a policy caused the alleged

violations of her constitutional rights.  Plaintiff offers a general allegation that "[i]t is common

for police officers to shield each other from punishment" (Compl., DE 1-1, at 4), citing unrelated

events over the course of decades in which her complaints to detectives, supervisors, and

investigative bodies allegedly were not addressed satisfactorily.  (See, e.g., id. at 4, 9, 13-21.)

However, these disparate events do not make plausible an inference that the City had a policy,

custom, or practice of allowing its employees to sexually assault its citizens and subsequently

obstruct investigation into those assaults, as would be required to state a viable claim of

municipal liability for the alleged violations.  See Bell Atl. Corp., 550 U.S. at 570.  Accordingly,

Plaintiff has failed to state a claim that the City is liable for the actions of the NYPD officers

who are alleged to have sexually assaulted Plaintiff or for the actions of NYPD officers who did

not investigate Plaintiff's claims to Plaintiff's satisfaction.

Plaintiff asserts that ACS employees worked in concert to deprive her of custody of her child by presenting false testimony to the Family Court.  Plaintiff alleges generally that ACS employees "made a series of misrepresentation[s] in the hearing."  (Compl., DE 1-1, at 4-5; Compl., DE 1-2, at 25.)  The Complaint repeatedly states that Plaintiff's ACS case "has been tainted by a conspiracy" in which ACS employees "invent[ed] a story" by "concoct[ing] false testimony" before the court.  (See, e.g., Compl., DE 1-2, at 26-27.)  Specifically, the Complaint alleges that ACS investigator Nicole Richards repeatedly lied to the Family Court, and that ACS attorney Kira Lecznar and "Law Guardian" Heather Saslovsky would "bait [Plaintiff] into confessing" to abusing her daughter and "use wheeling and dealing to make [Plaintiff] to become a mental disease in the cou[r]ts eyes."  (Compl., DE 1-2, at 27.)  The Complaint also alleges that ACS employees deceived Plaintiff's daughter into agreeing to be placed in foster care when they "deluded her with empty promises" of free college education (Compl., DE 1-4, at 43), which the Court construes as asserting a substantive Due Process violation under the Fourteenth Amendment of Plaintiff's right to "familial privacy[:] the right of the family to remain together without the coercive interference of the awesome power of the state."  Duchesne v. Sugarman, 566 F.2d 817, 825 (2d Cir. 1977).

While the Court assumes the truth of Plaintiff's allegations for the purposes of this motion, the isolated alleged misrepresentations by these individuals do not provide an objectively reasonable basis from which the Court can properly infer that ACS had a policy or custom of fabricating evidence or deceiving children in order to remove them from their parents.  Furthermore, none of these ACS employees are alleged to have had policy-making authority.  Accordingly, Plaintiff alleges no facts from which the Court can properly infer a practice attributable to the City.  (See, e.g., Compl., DE 1-1, at 4-5; Compl., DE 1-2, at 24-25.)

Plaintiff also appears to allege that she was treated differently by ACS and/or ACS case workers because of her nationality.  (Compl., DE 1-2, at 24-25) (Plaintiff was "blacklisted by [ACS] and some prejudiced ACS worker [who] often uses her/his position of power to get personal with the Chinese single mother.")  The Equal Protection Clause of the Fourteenth Amendment protects members of a class who have been treated differently from similarly situated persons outside of that class.  See Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).   Plaintiff has not, however, alleged facts showing the existence of a policy or custom sufficient to subject the City of New York to liability for any allegedly discriminatory treatment.  See discussion of Monell standard, supra.  The complaint also fails to state a claim in this regard because Plaintiff's conclusory allegations that ACS employees were "prejudiced" and would "get personal with the Chinese single mother" are not facts that, if true, could establish that Plaintiff was treated differently from a similarly situated non-Chinese person.  (Compl., DE 1-2, at 24-25; Compl., DE 1-3, at 47.)  Furthermore, Plaintiff has not alleged that any similarly situated person exists: the sole allegation of prejudice concerns her treatment, and her treatment alone.  Therefore, the Court cannot infer that she has been treated differently from a similarly situated person of another nationality.

Plaintiff appears to assert a section 1983 claim under the First Amendment that the Doe Defendants, and through them the City, forcibly hospitalized her on January 20, 2019, in retaliation for filing this action.[5]  To prevail on her First Amendment retaliation claim, Plaintiff "must prove: (1) [s]he has an interest protected by the First Amendment; (2) defendants' actions

---

[5]     Plaintiff alleges that "[b]ecause [she] filed a lawsuit against New York City Police Department… [she] was taken by ambulance to the mental hospital ER… by the NYPD cops."  (S.C. at 3.)  Plaintiff further asserts that her hospitalization was "an unconstitutional vindictive punishment" perpetrated in service of the NYPD's "ulterior motive."  (Id. at 3.)

were motivated or substantially caused by h[er] exercise of that right; and (3) defendants' actions effectively chilled the exercise of h[er] First Amendment right." Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).  Importantly, "[w]here a party can show no change in h[er] behavior, [s]he has quite plainly shown no chilling of h[er] First Amendment right to free speech." Curley, 268 F.3d at 73; see, e.g., Spear v. Town of West Hartford, 954 F.2d 63, 68 (2d Cir. 1992) (affirming dismissal of complaint on grounds that plaintiff had not alleged an actual chilling effect and had admitted that he had not changed his behavior as a result of the town's allegedly adverse actions); Singer v. Fulton County Sheriff, 63 F.3d 110, 120 (2d Cir. 1995) (dismissing First Amendment claim where plaintiff continued to publish his newspaper and failed to allege with sufficient particularity any actual chilling of speech); Kuck v. Danaher, 600 F.3d 159, 168 (2d Cir. 2010) (affirming dismissal of complaint which failed to alleged that speech was "actually chilled" as a result of defendant's actions).

Plaintiff has not alleged, in even conclusory fashion, that the exercise of her First Amendment right to maintain this action was chilled by the actions of the NYPD officers.  See Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (2d Cir. 1994) ("The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment.")  She alleges only that officers entered her home, forced her to leave with them, and had an ambulance take her to the Emergency Room of Mount Sinai Hospital "[b]ecause [she] filed a lawsuit against the New York City Police Department."  (S.C. at 2-3.)  The supplemental complaint contains no allegations that the acts of the NYPD changed Plaintiff's behavior with regard to this action.  To the contrary, Plaintiff has continued to prosecute her case: Plaintiff filed the supplemental complaint itself less than two weeks after the incident (S.C.), and she continued to participate actively in the instant motion practice.  (See, e.g., Docket

Entry Nos. 22, 24, 25, 28-30, 78-81.)  Accordingly, Plaintiff has not alleged facts from which the Court can infer that her First Amendment protected activity was "effectively chilled."  Curley, 268 F.3d at 73.

Additionally, Plaintiff has not alleged facts from which the Court can properly infer that the officers' behavior was prompted by her initiation of this action.  Plaintiff has only alleged in conclusory terms that the officers had an "ulterior motive" and took her to the hospital "[b]ecause [she] filed a lawsuit against" the NYPD.  (S.C. at 3.)  See Gagliardi, 18 F.3d 188, 195 (2d Cir. 1994) ("bald and uncorroborated allegation of retaliation might prove inadequate to withstand a motion to dismiss,… [unless plaintiff alleges] facts from which a retaliatory intent on the part of the defendants reasonably may be inferred.")  Plaintiff has not alleged that the officers knew, or were motivated by knowledge, that she had initiated this action against the NYPD two months earlier.  Accordingly, the City Defendants' motion is granted as to Plaintiff's section 1983 First Amendment retaliation claim against the Doe Defendants and the City, which fails to state a claim on which relief can be granted.

Plaintiff's First Amendment retaliation claim is also dismissed as against the City for failure to allege that the allegedly retaliatory actions of the Doe Defendants were taken pursuant to a custom or policy of the municipal defendant.  See discussion of Monell standard, supra.  The single January 20, 2019, incident alleged in the Complaint does not provide an objectively reasonable basis from which the Court can properly infer that the NYPD had a policy or custom of forcibly hospitalizing civil litigants.  Furthermore, none of the Doe Defendants are alleged to have had policy-making authority.  Consequently, Plaintiff alleges no facts from which the Court can properly infer a practice attributable to the City.  Plaintiff's section 1983

First Amendment retaliation claim is therefore dismissed for failure to a state a claim on which relief can be granted.

Accordingly, the Court grants the City Defendants' motion to dismiss Plaintiff's section 1983 claims against the NYPD and ACS (and thus, the City of New York) for failure to state a claim on which relief can be granted.[6]

Fourth Amendment Claim against unidentified NYPD Officers and City

Plaintiff claims that NYPD officers entered her apartment in the early morning hours of January 20, 2019, and seized Plaintiff in violation of the Fourth Amendment, taking her to the hospital.  (S.C. at 1.)  The Court construes the Supplemental Complaint as asserting a section 1983 claim against the Doe Defendants and the City for false arrest.  A section 1983 claim for false arrest under the Fourth Amendment is substantially the same as a claim under New York Law.  See Weyant v. Okst, 101 F.3d 845, 852 (S.D.N.Y. 1996).  Under New York law, a plaintiff claiming false arrest must show "that the defendant intentionally confined him without his consent and without justification."  Id.  In the absence of an arrest warrant, entry into the home to effect a seizure must be supported by exigent circumstances.  See Payton v. New

---

[6]     The claims the Court has construed as against the City of New York and dismisses for failure to allege the existence of a policy or custom are: Plaintiff's Fourteenth Amendment Due Process claim based on her allegations that NYPD officers sexually assaulted her between 2003 and 2013 (this claim is also dismissed as time barred, for the reasons explained above); Plaintiff's claim based on her allegations that NYPD officers conspired to cover up the alleged sexual assaults (this claim is also time barred); Plaintiff's Fifth Amendment claim based on her allegations that ACS employees forced her to agree to their statement of her case; Plaintiff's Fourteenth Amendment claim based on her allegations that ACS employees violated Plaintiff's substantive and procedural Due Process rights during Family Court proceedings between 2015 and 2017; and Plaintiff's Fourteenth Amendment claim based on her allegations that ACS employees violated her right to Equal Protection during the pendency of proceedings in Family Court.

York, 445 U.S. 573, 590 (1980) ("the Fourth Amendment has drawn a firm line at the entrance to

the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a

warrant.")  Exigent circumstances exist where the facts, "as they appeared at the moment of

entry, would lead a reasonable, experienced officer, to believe that there was an urgent need to

render aid or take action."  U.S. v. Simmons, 661 F.3d 151, 157 (2011) (quoting U.S. v. Klump,

536 F.3d 113, 117-118 (2d Cir. 2008)).  "This test is an objective one that turns on the totality of

the circumstances confronting law enforcement agents in the particular case."  Id. (citation

omitted).

     Plaintiff has alleged that, on January 20, 2019, she was awakened by several

NYPD officers who stood outside her apartment.  (S.C. at 1.)  She further alleges that "after I

opened the door, they rushed [in] to my apartment immediately," did not explain themselves, and

"forced me to go outside with them."  (Id. at 2.)  She alleges that she was not suicidal and had a

"bit of depression at the early morning." (Id.)  Plaintiff was then taken by ambulance to Mount

Sinai Hospital, where she was diagnosed with "adjustment disorder with anxiety."  (Id. at 5.)

Plaintiff proffers paperwork summarizing her visit, which states the reason for the visit was a

"psychiatric problem."  (Id. at 5.)  Plaintiff alleges that she was told by an NYPD officer at the

twenty-fifth precinct that, an hour before she was taken to the hospital, "someone called 911 and

made a report about" her.  (Id. at 3.)[7]  Plaintiff has not alleged anything about the facts that were

---

[7]     Defendant NYPD argues that "a call to a 911 operator can provide the exigent
circumstances necessary to justify a warrantless entry."  (Docket Entry No. 50, at 32.)
Defendant proffers a 311 activity log and audio recording of a 911 call which purport to
show that Plaintiff called 311 on the morning of January 20, 2019, and stated that she
wanted to commit suicide because she had been sexually assaulted ten years earlier.  (Id.
at 33.)  The 311 operator transferred the call to 911, and the 911 dispatcher requested that
a police unit check on Plaintiff.  (Id.)  Defendant argues the Court may take judicial
notice of materials outside the complaint where they "aid the Court in its determination of
whether plaintiff states a claim for relief," citing district court decisions which considered

known to the officers at the time they came to her apartment and does not allege that her seizure

was pursuant to a warrant.  To the extent she alleges anything regarding their motivation, she

claims conclusorily that they were acting in retaliation for her commencement of this lawsuit.

(Id.)  While Plaintiff alleges that she was told someone called 911 to make a report about her, she

has not alleged the substance of that call.  If the Complaint's allegations are proven true, there is

a plausible set of facts which would entitle Plaintiff to relief: namely, that officers of the NYPD

entered her apartment and seized her without a warrant or exigent circumstances.  See Bell Atl.

Corp., 550 U.S. at 570 (to survive a motion to dismiss, a complaint must allege "enough facts to

state a claim to relief that is plausible on its face"); Iqbal, 556 U.S. at 678 (the complaint must

allege facts which allow "the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged"); Roth, 489 F.3d at 501 (the Court must "draw all reasonable

inferences in favor of the plaintiff").

　　　　　The allegation of a warrantless entry and seizure not justified by exigent

circumstances is sufficient to state a claim of false arrest against the Doe Defendants, who, if

they are served and appear, will have the burden of demonstrating that their actions were

---

documents and recordings outside the pleadings.  (Id. at 19.)  Defendant's authorities are
not persuasive in the context of this complaint.  Judicial notice may be taken of
documents outside the complaint if they are "integral to" the complaint, Global Network
Communs., Inc. v. City of New York, 458 F.3d 150, 156 (2d Cir. 2006), or the
documents were in plaintiff's possession or plaintiff relied on them in bringing suit.  See
Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).  "A court may consider
extrinsic documents where the complaint 'relies heavily upon its terms and effect.'"
Global Network Communs., Inc., 458 F.3d at 156 (quoting Chambers v. Time Warner,
Inc., 282 F.3d 147, 153 (2d Cir. 2002)).  Here, while Defendant's defense of exigent
circumstances "relies heavily" upon the contents of the proffered documents and
recording, the Complaint does not.  The supplemental complaint does not allege that any
call to 311 was made, and only contains a single reference to the 911 call.  Because the
supplemental complaint does not rely on the existence or contents of either call, the
proffered documents and recordings are not integral to the complaint and thus are not
suitable for judicial notice.

justified by exigent circumstances.  See Welsh v. Wisconsin, 466 U.S. 740, 750 (1984) ("the

burden is on the government to demonstrate exigent circumstances that overcome the

presumption of unreasonableness that attaches to all warrantless home entries.")  However, the

claim cannot be litigated as against unnamed and unserved defendants.  Cf. Valentin v. Dinkins,

121 F.3d 72 (2d Cir. 1997).  The Court will direct the City to inquire into the identities of these

individuals and provide to Plaintiff the information necessary to name them in an amended

complaint and serve them.

   The Complaint does not contain allegations from which the Court can properly

infer that the Doe Defendants acted pursuant to a custom or policy attributable to the City.

Indeed, Plaintiff alleges that the January 20, 2019, incident was an "unconstitutional vindictive

punishment under penalty of ulterior motive by some bad cops."  (S.C. at 3.)  Because a claim

against the City must allege that the action was the result of a municipal custom or policy, see

Jones, 691 F.3d at 80, Plaintiff has failed to state a claim against the City.  Plaintiff's section

1983 claim against the City for violation of her Fourth Amendment rights is dismissed.


Conspiracy claims

   Plaintiff asserts, in general terms, claims of conspiracies among members of the

NYPD and among members of ACS.  The Court construes the Complaint as attempting to state

claims under section 1983 and section 1985(3), which applies specifically to conspiracies.  A

viable claim of conspiracy under section 1983 requires allegations showing "(1) an agreement

between two or more state actors or between a state actor and a private entity; (2) to act in

concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal

causing damages."  Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).  Thus, "absent an

underlying constitutional violation on which to base a § 1983 conspiracy claim, a plaintiff's conspiracy claim fails as a matter of law." Bertuglia v. City of New York, 839 F. Supp. 2d 703, 728 (S.D.N.Y. 2012) (citation omitted); see, e.g., Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001) ("Since plaintiff cannot establish a claim for false arrest or the use of excessive force, he may not maintain a § 1983 cause of action for conspiracy.")  The Court has dismissed all of Plaintiffs section 1983 claims except for the Fourth Amendment claim against the Doe Defendants arising from the January 20, 2019, incident.  The Supplemental Complaint does not raise a conspiracy claim or contain any allegations that officers of the NYPD agreed to inflict a constitutional injury and, as explained above, her conclusory allegations of retaliatory motivation fail to state a constitutional violation claim.  Accordingly, Plaintiff's claims of conspiracy under section 1983 are dismissed.

To state a claim pursuant to section 1985,[8] Plaintiff must allege a deprivation of her constitutional rights as a result of racial, ethnic, or class-based animus.  See Zemsky v. City of New York, 821 F.2d 148, 150 (2d Cir. 1987) ("A plaintiff states a viable cause of action under section 1985[(3)] . . . only by alleging a deprivation of [her] rights on account of [her] membership in a particular class of individuals.")  Additionally, the Complaint "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003).  Here, the Complaint does not allege any facts from which the Court can infer that members of the NYPD or ACS were motivated by class-based animus.  See discussion of

---

[8] The first Section 1985(2) prohibits interference with federal court proceedings without reference to class-based animus.  However, Plaintiff's claims arise under section 1985(3), not section 1985(2), as the complaint does not allege that any defendant conspired to interfere with federal court proceedings.

Plaintiff's section 1983 equal protection claim, <u>supra</u>.  Furthermore, Plaintiff's allegations that

the defendants agreed to violate her rights are vague and conclusory.  Plaintiff asserts a general

allegation that it "is common for police officers to shield each other from punishment," (Compl.,

DE 1-1, at 4; Compl., DE 1-2, at 20-21), citing unrelated events over the course of decades in

which her complaints to detectives and supervisors were not answered to her satisfaction.  (<u>See,</u>

<u>e.g.</u>, Compl., DE 1-1, at 11-17 (in response to Plaintiff's 2005, 2008, and 2013 complaints to

NYPD's internal affairs bureau ("IAB"), Plaintiff was allegedly "threatened" and told to "hold

[her] peace" as a means of "pressur[ing her] to withdraw [her] complaint because police officers

cover for each other."); <u>id.</u> at 18-19 (in 2018, NYPD special victims squad detective "refused to

take [Plaintiff's] important material evidence" and closed her case."))  However, under the

intracorporate conspiracy doctrine, "officers, agents, and employees of a single corporate entity

are legally incapable of conspiring together."  <u>Hartlin v. Gallo</u>, 546 F.3d 95, 99 n.3 (2d Cir.

2008).  To the extent that Plaintiff alleges a conspiracy among only NYPD officers, (<u>see</u>, <u>e.g.</u>,

Compl., DE 1-1, at 4, 11-19), or among only ACS employees (<u>see</u> Compl., DE 1-3, at 56),

Plaintiff's conspiracy claims under section 1985 are barred by the intracorporate conspiracy

doctrine.

       Furthermore, the Complaint fails to allege an objective factual basis from which

the Court can properly infer a meeting of the minds among NYPD officers who were allegedly

involved in the various incidents of sexual assault.  Plaintiff's only allegation of an agreement

among the officers identified in the events in question, which spanned more than a decade and

involved officers from different precincts and departments, is the general statement that "it is

common for police officers to shield each other from punishment."  (Compl., DE 1-1, at 18; <u>see</u>

id. at 11-17.)   Accordingly, the Complaint fails to state a claim of conspiracy among NYPD

officers under section 1985 upon which relief can be granted.

    Plaintiff also asserts a claim of conspiracy among ACS employees to deprive her

of Due Process in Family Court proceedings in April of 2017.   Plaintiff alleges that ACS

employees "made a series of misrepresentation[s] in the hearing," (Compl., DE 1-3, at 56), and

that as a result, the case had "been tainted by a conspiracy…."   (Compl., DE 1-2, at 26.)

Plaintiff's conclusory allegations that employees of ACS worked together to deprive her of

custody of her child by proffering false testimony are not allegations of fact from which the

Court can properly infer an agreement between ACS employees to deprive her of her

constitutional rights.   Nor does Plaintiff allege facts from which the Court can infer that ACS

employees agreed with the Family Court to deprive her of her constitutional rights – Plaintiff

alleges that ACS personnel continually lied to the Family Court.   (Compl., DE 1-2, at 26.)

Accordingly, to the extent the Complaint alleges a conspiracy beyond ACS employees that is not

barred by the intracorporate conspiracy doctrine, Plaintiff fails to state a claim of conspiracy

under section 1985 upon which relief can be granted.

    Plaintiff's claims of conspiracy against Hugh M. Mo and the Law Firm fail to

state a claim under section 1985 because they, too, lack an adequate factual basis.   Plaintiff

alleges in conclusory fashion that, during her sexual assault case against Mo's client, he and the

court participated in a "joint fraud all the time in the Jury Trial" which resulted in proceedings

"tainted by conspiracy."   (Compl., DE 1-4, at 68.)   Plaintiff appears to suggest that there was an

agreement between Mo and the court to protect the defendant because the court regularly

sustained Mo's objections and would hold "closed-door meeting[s] with the attorneys."

(Compl., DE 1-3, at 46.)   Noting that Mo is a former "Deputy Commissioner" of the NYPD,

Plaintiff also alleges that "[i]t is common for cops and judicial staff[] to shield each other from punishment."  (Compl., DE 1-3, at 57; Compl., DE 1-4, at 68.)  Plaintiff's allegations of fact, if true, do not provide an objective basis from which this Court can plausibly infer that Mo and that court agreed to deprive Plaintiff of a fair trial.  "Plaintiff has not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among… the defendants."  Webb, 340 F.3d at 111.  Therefore, Plaintiff has failed to state a claim of conspiracy against Mo and the Law Firm under section 1985 upon which relief can be granted.

For the foregoing reasons, all of Plaintiff's section 1983 and 1985 conspiracy claims are dismissed.

Section 1983 claims against Hugh H. Mo and the Law Firm

Plaintiff has asserted claims against Hugh H. Mo and The Law Firm under section 1983.  To state a claim under section 1983, a plaintiff must allege both that (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor."  West v. Atkins, 487 U.S. 42, 48-49 (1988).  Private parties generally are not state actors and are therefore not usually subject to liability under section 1983.  Sykes v. Bank of Am., 723 F.3d 399, 406 (2d Cir. 2013) (quoting Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001)); see also Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").  Generally, a private attorney does not act under color of state law simply by virtue of the attorney's role as an officer of the court.  See Polk Cnty. v. Dodson, 454 U.S. 312, 324 (1981); Hayes v. Law Firm of Aiello & Cannick, No. 10-CIV-5511 (KMK), 2013 WL 1187439, at *4 (S.D.N.Y. Mar. 21, 2013)

("Defendants, Plaintiff's privately retained former attorney and that attorney's law firm, are clearly not state actors.") (citing Polk Cnty., 454 U.S. at 324), appeal dismissed, No. 13-1584 (2d Cir. July 26, 2013). Instead, to act under color of state law, a private actor must be a "willful participant in joint activity with the State or its agents." Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970). A "merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a [section] 1983 claim against the private entity." Ciambriello, 292 F.3d at 324.

To properly plead that Defendants Mo and the Law Firm acted "under color of state law," Plaintiff must allege facts from which the Court can infer "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello, 292 F.3d at 324-35. Plaintiff has alleged acts relating to Mo's representation of Dr. Tsai Chung Chao in a "series of cases" involving Plaintiff beginning in 2010. (Compl., DE 1-4, at 60.) While Plaintiff alleges that Mo and the judge who presided over the 2018 jury trial in that series of cases were "former colleague[s] and good friend[s]" (Compl., DE 1-4, at 63), and offers a vague allegation that they were part of a "joint fraud" or "conspiracy to perform official misconduct" throughout the trial (id.), Plaintiff has not alleged specific facts from which the Court can properly infer the existence of an agreement to deprive Plaintiff of her constitutional rights. Ciambriellos, 292 F.3d at 324 ("merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a" claim). Accordingly, Plaintiff has not alleged facts sufficient to demonstrate that either Mo or the Law Firm was a state actor within the meaning of section 1983 at any relevant time. Furthermore, any claim based on injuries that occurred prior to November 26, 2015, would be time barred, as explained above. The Court therefore dismisses Plaintiff's

section 1983 claims against Mo and the Law Firm for failure to state a claim on which relief can be granted.

Plaintiff's request for review of her Family Court cases

Plaintiff requests a "thorough and comprehensive review of all of [her] ACS cases" (Compl., DE 1-2, at 24; see also id., at 29 (asking "that this Court reverse this case of Neglect"); Compl.-3, at 5 ("review my cases of child Neglect"), complaining that she was not "give[n] a chan[c]e to show [her] evidence."  (Compl., DE 1-3, at 54.)  The Rooker-Feldman doctrine limits federal court jurisdiction over state court decisions where the federal court plaintiff "(1) lost in state court, (2) seeks redress for injuries caused by a state court judgment, (3) invite[s] district court review and rejection of that judgment, and (4) files suit after judgment has been entered in the parallel state proceedings."  Canning v. Admin. for Children's Servs., 588 Fed. App'x 48, 49 (2d Cir. 2014) (internal citation omitted); see Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). The Second Circuit has applied this doctrine to dismiss civil rights actions seeking damages relating to the results of state court removal proceedings initiated by ACS.  See, e.g., Id. (affirming dismissal of a claim on Rooker-Feldman grounds that a state court judgment under which plaintiffs lost custody of their children was "procured through the use of unconstitutional procedures").  A party has "lost" in state court if the court orders removal of the child on a non-temporary basis.  Compare Id. with Green v. Mattingly, 585 F.3d 97, at 102 (2d Cir. 2009) (plaintiff had not "lost" in state court where there was "no final 'order of disposition' removing her child.") (citation omitted).

Here, Plaintiff alleges that her child was removed from her custody as a result of a

Family Court decision in 2017.  (Compl., DE 1-3, at 43.)  Plaintiff also alleges that she

unsuccessfully sought reconsideration of that decision and pursued an appeal through the state

courts.  (Compl., DE 1-2, at 29.)  Plaintiff now seeks damages for the loss of custody of her child

and invites this Court to review and reject the Family Court's judgment on the grounds that it

was procured by a violation of the Due Process Clause of the Fourteenth Amendment.  (Compl.,

DE 1-3, at 44.)  Such review and relief from state court decisions are precluded by the Rooker-

Feldman doctrine.  Accordingly, this Court lacks jurisdiction to entertain Plaintiff's claims to the

extent they seek review of, or relief relating to, the 2017 decision of the Family Court.

Relatedly, to the extent that Plaintiff seeks review of her ongoing Family Court

proceedings concerning the continued placement of her child in foster care (Compl., DE 1-2, at

29), the court will abstain from considering her claims, pursuant to the Younger abstention

doctrine.  The Younger doctrine counsels federal-court abstention when there is a pending state

proceeding, reflecting a "strong policy against federal intervention in state judicial processes in

the absence of great and immediate irreparable injury to the federal plaintiff."  Moore v. Sims,

442 U.S. 415, 423 (1979); see Younger v. Harris, 401 U.S. 37 (1971).  While originally

articulated with reference to state criminal proceedings, the Younger doctrine also applies to civil

proceedings in which important state interests are involved, such as proceedings that are akin to

criminal prosecutions.  Id.  Child welfare proceedings are akin to criminal prosecutions, see

Moore, 442 U.S. at 435, and the need for abstention is particularly salient in the "traditional area

of state concern" that is the task of preserving child welfare.  Id. at 435; Falco v. Justices of the

Matrimonial Parts of the Supreme Court, 805 F.3d 425, 427-28 (2d Cir. 2015) (affirming

abstention because injunctive relief would interfere with ongoing custody proceedings).  Here,

Plaintiff has not alleged a "great and immediate irreparable injury" that would warrant federal intervention in the state's judicial process.  Plaintiff alleges that her child was removed pursuant to the order of the Family Court and that the Family Court violated her right to due process in the course of the underlying proceedings.  (Compl., DE 1-2, at 29; Compl., DE 1-3, at 43.) However, a parent's loss of custody of their child pursuant to a court order is the very injury that is incidental to every state court removal proceeding.  Cf. Younger, 401 U.S. at 49 ("the injury that Harris faces is solely that incidental to every criminal proceeding brought lawfully and in good faith.").  Furthermore, the allegation of a due process violation in the course of custody proceedings has been held insufficient to avoid the application of Younger abstention.  See Moore, 442 U.S. at 435 ("We are unwilling to conclude that state processes are unequal to the task of accommodating the various interests and deciding the constitutional questions that may arise in child-welfare litigation.")  Accordingly, to the extent that Plaintiff requests that this Court enjoin ongoing child custody proceedings (Compl., DE 1-2, at 29), the Court abstains from entertaining her claim.

Claims under state law

The Court has dismissed all of Plaintiff's claims except her Fourth Amendment claim against the Doe Defendants that arises from the January 20, 2019 incident.  Accordingly, the Court declines to exercise supplemental jurisdiction of all Plaintiff's state law claims except for those that arise from the seizure aspect of the January 20, 2019 incident, which the Court will hold in abeyance pending identification of the Doe Defendants and further proceedings.  See 28 U.S.C.S. § 1367(c)(3) (LexisNexis 2012) (A district court may decline to exercise supplemental jurisdiction over claims under state law when it "has dismissed all claims over which it has

original jurisdiction."); <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 (1988) ("when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction . . . .") (footnote omitted).

C<small>ONCLUSION</small>

For the foregoing reasons, the Court grants Defendants' 12(b)(1) motion to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction to the extent that Plaintiff seeks review of her state court cases.  The Court also grants Defendants' 12(b)(6) motions to dismiss this action with respect to all of Plaintiff's remaining claims for failure to state a claim upon which relief can be granted, except for Plaintiff's section 1983 claim against the Doe Defendant police officers for violations of the Fourth Amendment arising from the events of January 20, 2019, which the Court will give Plaintiff an opportunity to pursue.

<u>Valentin v. Dinkins</u>, 121 F.3d 72 (2d Cir. 1997) (per curiam), holds that a <u>pro se</u> litigant is entitled to assistance from the district court in identifying a defendant.  The problem encountered by Plaintiff is a common one, as it frequently is difficult or impossible for <u>pro se</u> litigants to identify and, once they are identified, to effect service on individual police and correction officers.  The Court hereby requests the office of the New York City Corporation Counsel to attempt to ascertain the identities of the Doe Defendant officers whom Plaintiff seeks to sue here and, if they can be identified, to seek to obtain authority to accept service of process on their behalf.[1]  The identity of officers can often be ascertained by review of incident reports

---

[1]  In accepting service on their behalf, the Corporation Counsel need not undertake to defend or indemnify the officers.  The point of the request is merely to provide a means by which the officers may be served without the need to disclose their whereabouts or put the Marshals Service to the burden of pursuing them while they are on duty, an activity

involving the allegations of a complaint.  Here, the relevant incident allegedly occurred on

January 20, 2019, beginning with the removal of Plaintiff from her home.  The Corporation

Counsel is directed to report to the Plaintiff and the Court on whether the officers can be

identified and, if so, whether they will accept service on their behalf, not later than **September

21, 2020**.  Once informed of the identities and addresses of the Doe Defendants (and/or that the

Corporation Counsel will accept service on their behalf), Plaintiff must file an Amended

Complaint identifying the Doe Defendants and containing all of the allegations concerning them

that were included in the Supplement to the Complaint, by **October 21, 2020**, and serve the

Supplemental Complaint with an Amended Summons on each Doe Defendant (via the office of

the Corporation Counsel, if that Office indicates that it is authorized to accept service on behalf

of the Doe Defendants).

   If the City fails to provide identifying and service information concerning the Doe

Defendants in a timely manner, the parties are directed to request a conference with Judge

Netburn to discuss discovery.

   The Court declines to exercise jurisdiction of Plaintiff's claims under state law

except for those arising from the seizure aspect of the January 20, 2019 incident, which the Court

will hold in abeyance pending identification of the Doe Defendants and further proceedings.  28

U.S.C. § 1367(c)(3).

   The Court denies as moot all motions and requests for relief not previously

addressed by the Court.

---

that would be wasteful of the resources of the Marshals Service and disruptive to the
Police Department.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

This order resolves docket entry numbers 7, 46, and 101.

The Court directs the Clerk of Court to mail a copy of this order to Plaintiff and note service on the docket.  In light of the current global health crisis, Plaintiff is encouraged to submit all filings by email to Temporary_Pro_Se_Filing@nysd.uscourts.gov.  Plaintiff is also encouraged to consent to receive all court documents electronically.  A consent to electronic service form is attached to this order and is available on the Court's website.  If email is unavailable, Plaintiff may submit documents by regular mail or in person at the drop box located at the U.S. Courthouse in Manhattan, 500 Pearl Street, New York, NY, 10007.  For more information, including instructions on this new email service for pro se parties, please visit the Court's website at nysd.uscourts.gov.

This case remains referred to Magistrate Judge Netburn for general pretrial management.

SO ORDERED.

Dated: New York, New York
          August 6, 2020


                                                  /s/ Laura Taylor Swain
                                                  LAURA TAYLOR SWAIN
                                                  United States District Judge


Copy Mailed To:        Yi Sun
                       10 E. 116th St, Apt. 3A
                       New York, NY 10029

**United States District Court**
**Southern District of New York**

# Pro Se (Nonprisoner) Consent to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1. Sign up for a PACER login and password by contacting PACER[1] at www.pacer.uscourts.gov or 1-800-676-6856;

2. Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail.[2] Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

## IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1. You will no longer receive documents in the mail;

2. If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;

3. This service does *not* allow you to electronically file your documents;

4. It will be your duty to regularly review the docket sheet of the case.[3]

---

[1] Public Access to Court Electronic Records (PACER) (www.pacer.uscourts.gov) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

[2] You must review the Court's actual order, decree, or judgment and not rely on the description in the email notice alone. *See* ECF Rule 4.3

[3] The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.

## CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents in my case(s) listed below. I affirm that:

1. I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2. I have established a PACER account;

3. I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;

4. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5. I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and

6. I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.

**Civil case(s) filed in the Southern District of New York:**

**Note:** This consent will apply to all cases that you have filed in this court, so please list all of your pending and terminated cases. For each case, include the case name and docket number (for example, John Doe v. New City, 10-CV-01234).

_____

_____

_____
Name (Last, First, MI)

_____
Address          City               State             Zip Code

_____
Telephone Number              E-mail Address

_____
Date                       Signature

**Return completed form to:**

Pro Se Intake Unit (Room 200)
500 Pearl Street
New York, NY 10007